Good morning. May it please the Court, Dan Beeks on behalf of the appellant, Western Group Nurseries. We're here today on a case that has a somewhat long and complicated factual and procedural history. Somewhat long, ridiculously long. It dates back to, I was still, I think, an undergrad when this all began. But for purposes of what we're here today on, it's actually fairly simple and straightforward. We're here on a fairly distinct legal issue dealing with the statute of limitations. And there's basically two issues. Number one, did the District Court err when it applied the New York statute of limitations instead of applying the Arizona statute? And number two, if the New York statute was applicable, did the Court err in finding when the statute began to run? We start with a couple of general overarching principles that should guide your consideration here today. Number one is the general preference against deciding cases on the disfavored statute of limitations defense and the general presumption in favor of deciding cases on their merits. We're dealing here with what was an Arizona limited partnership that operated a business in Arizona. We're here on breaches that primarily took place in the state of Arizona. And we're arguing that Arizona law should apply in this case. There's a lot of different ways we can end up at the conclusion we want, which is that the District Court erred and that the case was not barred by the statute of limitations. Perhaps the easiest way to get there from our standpoint is that the Court, if you start with the presumption that contractual choice of law provisions would govern the statute of limitations issue, which, of course, we dispute, but if we start with that premise, the District Court focused on the statute of limitations. That is the current restatement. Exactly. And it's the predominant position in the United States. That's true. And there were contracts here that contained a choice of law provision, weren't In my view, there's five contracts, and you're right. Three of them expressly say New York. The fourth one adopts New York. And the fifth one says Arizona. But it's the fifth one that's the one that should govern here. And that's the partnership agreement. But is it the partnership? You say that the partnership agreement is the one that sets up the personal liability. Where is that? It's actually in the partnership agreement itself. The partnership agreement, and this is quoted, I think, probably in our reply brief, says, on its face, each limited partner agrees to be personally liable for his pro rata share of the partnership note. That's right in the partnership agreement itself. Now, the two But the argument here is a more distinct one. It's really what is the pro rata share, and that seems to be based on two different statutes, both of which have the New York provision in it. Well, the pro rata share is fairly well defined in all the contracts. It's an amount up to $260,000. But that's not the issue. I thought that's the issue. The question is whether it's an amount up to $260,000 or whether it's an amount up to their contribution to the partnership. Isn't that the ultimate issue here? No. I mean, it's clear that they're obligated beyond what their initial contribution  was. That was the whole point of this additional liability was so that they would have additional money at risk so they could, in theory, get the tax benefits they were trying to get. Isn't that where this is all heading off to, whether they're liable? Maybe I'm misunderstanding. I thought that the real ultimate question is whether if they're liable, they're liable for the $100,000 they put in or $280,000. For purposes of what we're here today, that's the down the line issue. That's the contractual issue that's at the core of the case. If there is a contract, if the contract applies at all, no? Well, the district court never got near that issue. The district court, in reviewing the bankruptcy court's findings de novo, stopped after it said the easiest way out is to... I know. I'm quite aware of that. But in trying to figure out what statute of limitations applies, don't we have to know which contracts matter? And the ones that matter seem to me to be not that one, but the ones that set out in some detail what they're going to be liable for for this transaction, not in general. Well, they all basically say, and they use slightly different words, but they all say almost identically the same thing, which is the language I just quoted to you from the partnership agreement, that each partner agrees to be personally liable for a pro rata share of the partnership note up to $260,000. Well, maybe I misunderstood. Well, let me ask you this. The district court didn't agree with you. The district court said that the New York statute of limitations, the New York law... Correct. Law, and that under New York law you're out of luck with the statute of limitations. The Arizona tolling provision doesn't apply. Is that basically what you're saying? That's what the district court held. Why did the district court choose the ñ the district court chose the New York statute of limitations? Because it was in those contracts that you ñ so it went wrong. Why? Well, it relied on the three contracts that had expressed New York choice of law provisions. That would be the sale agreement where world, what's called world in the briefs, sold to the limited partnership. New York choice of law was in the promissory note from the partnership to world and in the security agreement. But isn't the security agreement, wasn't it ultimately the security agreement that it relied on because that's the one that relates back to the individual partners? Well, there were some defenses that were brought up that were specifically tied to some of the provisions in the security agreement. Now, those weren't reached by the district court here, but the provision in the security agreement was virtually identical to the one in the partnership agreement. But I guess our point is the limited partners weren't parties to the partnership note, the sale agreement or the security agreement. These are limited partners. A limited partner, by definition, is liable only for the contribution they've made to the partnership. That's why you're a limited partnership. Your liability is limited. The only way you get beyond that is if you've agreed to something. As the district court recognized, the limited partners were basically sureties. This Court knows statute of fraud says if you're going to be bound as a surety, there has to be something in writing signed by you. The only two documents, the two contracts that would be signed by the limited partners would be the subscription agreement or the partnership agreement. The subscription agreement has a New York choice of law. The partnership agreement has an Arizona choice of law. So now you're down to two contracts to choose between. A subscription agreement is basically an offer to become a partner. You don't become a partner by signing it. The subscription agreement in this case made it very clear that you had to be approved, it had to be accepted by the general partner before you would become a limited partner. They had to clear you that you were a sophisticated investor. But perhaps the most telling piece of evidence in the subscription agreement itself is that it recognizes that the liability on the pro rata share comes, quote, pursuant to the partnership agreement. That's in the subscription agreement itself, that pursuant to the limited partnership agreement, they will be liable for their pro rata shares. So the subscription agreement itself recognizes that the overarching document that creates the liability of the limited partners for a pro rata share is the limited partnership agreement. That document had an Arizona choice of law provision in it. Now, if we back up a step, it's our position that the contractual choice of law provisions are irrelevant. The revised restatement provision that Judge Schroeder and I just talked about certainly is the provision in the restatement. It certainly has been adopted by many states and courts throughout the country. But what's important for us here today is whether it's been adopted in Arizona. The district court held that it had been implicitly adopted by the Arizona court in Deloach. Deloach is an awfully thin reed for the court to hang its hat on. The issue was not squarely presented. The Arizona Supreme Court had held directly in 1986 in Monroe v. Wood that the traditional view continued to be the law in Arizona. Deloach did not overrule Monroe. And the Deloach case itself said, number one, neither party raised the issue, so therefore, whatever they sat on, it would have been dicta. And number two, they only accepted review on one issue. The issue they accepted review on is whether the court had properly applied the revised. But also Deloach wasn't about a contractual provision, right? That's true. But the only way you get to a contractual provision is if the statute of limitations is no longer viewed as procedural. Because if it's viewed as procedural, the contractual provisions, you still don't take the statute of limitations. You apply the substantive law, but you don't apply the statute of limitations. It's only if it moves beyond being procedural under the traditional rule. So you have to get to revise section 142 before the contractual provisions and section 187 of the restatement become important. What about the argument that this really should be governed by Federal law anyway because we're in bankruptcy? It sounds good on its face. There is some broad sweeping language in the case cited by the appellees that would support that, but it's wrong. The case law, if you read behind it, the case they cited does make the blank statement that would support their position. I'll give you that. All it does is make the bald position and cite to an older case. The older case makes it clear that, yes, Federal choice of law rules provide our due control if we're dealing with Federal questions. By definition here, we're dealing with a noncore proceeding, i.e., not a Federal question, i.e., we're dealing with State law issues. And the cases, we cited quite a few of them in our reply brief, make it very clear in cases in all kinds of circuits, including at least the Ninth Circuit in some of the older cases, say if you're dealing with State law issues not involving Federal interests, you apply State law choice of law rules. So I'll give you that there's broad language. In one case, the Ninth Circuit would support that, but if you read behind it, it's overly broad. It's the rule if you were considering bankruptcy issues, the automatic stay, discharge, non-dischargeability, things that are true bankruptcy issues, yes, Federal choice of law rules would apply. Here, we are dealing with strictly State law issues, definitions of property rights under State law, and in those situations, you do apply the State choice of law rules. So it's an inventive argument, one which I will note for the Court was not raised below, and you ought to be awfully hesitant to consider for the first time on appeal. But in any event, it's wrong. That leaves us, of course, I guess with the last argument, which is assuming New York law did apply, the New York statute did apply, the Court improperly figured out when the statute started to run. We did send an acceleration letter in February 1986 that the district court relied on in finding that the statute started to run in February of 86. It's our position, and it's pretty well spelled out in our briefs, that we were entitled to revoke that acceleration under New York law. New York law allows a lender to revoke an acceleration if it's done within the statute of limitations and the debtor has not suffered any prejudicial reliance on the acceleration. It's our position that in this case, that's exactly what we did. In the State court action, we disclaimed any reliance on any of the earlier alleged defaults from that February 1986 default letter. We relied only on defaults taking place beginning in November of 1986. That's all that the court entered judgment on. That's all that we foreclosed upon. It's our position that at least that raises a question of fact as to whether or not we revoked our acceleration and it was improper to grant judgment against us as a matter of law, finding that the statute began to run upon the sending of that February of 1986 acceleration letter. I'm going to try to reserve my last two minutes unless you have any other questions. Thank you. Thank you. Good morning, Your Honors. I'm Don Gaffney, appearing on behalf of Mr. and Mrs. Whitehead and the other affilies. Your Honor, we believe that Judge McNamee did a very good job of dealing with a very difficult case that has gone on for some 30 years in the courts. I would like to start with a basic disagreement with what counsel suggested is a broad proposition. I have to insist it's untrue, and that is that Federal bankruptcy courts do not apply the second restatement and that there is a Federal conflict of law rule in the Federal courts. If he cited the Vortex fishing case we have, and we had in turn cited Stalinzi, a case in 1994 decision in the Ninth Circuit. We point out that, and is well documented in this court's history, that in defending an appeal before this court rapidly, we are allowed to rely upon any legal theory that would justify a defense of that. It is raised in the first instance, we agree, but in all fairness, we were just substituted in on appeal as counsel in this case. But we think it's very appropriate that it should be here. If one looks at the Lindsay case, the 1994 case, it does its own string citation of the other circuits that all consistently and without fail follow the rule that a Federal court sitting in bankruptcy follows the restatement second and its principles on conflicts of law. There are good policy reasons for that, which we could get into if we wanted, but it's an unbroken rule. In fact, if the Ninth Circuit at this point decided not to follow that rule and say, well, no, we're going to create a special new rule for conflict of law application in bankruptcy, we would be going against every circuit that's addressed the case, including this Court's own repeated decisions in this. Now, where does he get this distinction he's throwing out, that it only applies in adversaries? I don't know where he's getting it, Your Honor, not the least of which is let's look at what the cases are. Vortex Phishing was a case involving a contested involuntary bankruptcy petition. Those, there is the bankruptcy rule dealing with how you, the legal procedure for that is Bankruptcy Rule 1018. 1018 incorporates large groups of the adversary case. Lindsay is a classic fraudulent transfer lawsuit brought under both Federal and State grounds under a formal adversary proceeding under Rule 7001. Exactly what we're dealing with here. Same case, kind of case, same procedure, same rule. Second Circuit decided in Lindsay, the Courier case, and a classic injunction, 7001 case. Seventh Circuit, Moore's case, 7001 Declaratory Judgment Act. It is an unbroken strain that every court, whether it's under the contested matter rules of 9014, the formal adversary rules of 7001, the specialized rules for involuntary petitions, all hold that it's a Federal rule of conflict of laws. We do think that's an established rule before this Court and the other circuits and it would be unusual for this Court to depart in this instance. The next question, if it is a Federal rule, then how do you apply it? We believe, again, Judge McNamee correctly approached it by referring to the restatement, the second, and the concept of what are the substantial interests of the parties involved in the contracts or the occurrence at issue. We think he did a good analysis of that in his opinion, because he goes and parses through the individual agreements, the subscription agreement, the promissory note, the individual executions of the individual parties. Remember that at the end of the day, and we would even point the Court to the appellant's opening brief, his long section in which he goes through why he gets prejudgment interest under New York law. He is suing on the note. He is not suing under the limited partnership contribution agreement. He goes on at great length. I will not digress unless the Court wishes into the engagement. But the note, the governing contract here has to be one that has something to do with the distribution of liability among the limited partners, right? Because that's the ultimate question here, is it not? Yes, Your Honor. So does the note address that question? Yes, the note does. If I could refer to the actual note itself. The note itself specifically talks, gives how the payments are to be made and then goes into, in fact, this is where they get to the obligation of a limited partner. Remember, the limited partnership itself says we only own a max of contribution $100,000, but it is only through the secured note, which on the third page says, notwithstanding the foregoing or any other provision of this note, to the contrary, each limited partner of the maker shall be personally liable to the extent of $260,000 per unit. And that's what he's calling the security agreement, is it? This is actually the secured recourse note. The subscription agreement and the security agreement have the same type of language. There's a separate security agreement other than the note? Yes, ma'am, there is. That, there are actually two security agreements. The first one, 1231, 1984, it was executed at the time of the same project. It all, this one actually has the specific New York choice of law clause, including the language without giving effect to conflict of law principles. That is the security agreement. There is a second security agreement that was executed. It has the exact same language of New York choice of law. The note itself, in turn, specifically refers to the security agreement for all of its identified and specified terms to be incorporated. The subscription agreement also has the exact language of a determination of New York law. If you're a limited partner, and remember, this is a group of people spread around the country who are being solicited to be made investors under a subscription agreement, and my clients are all over the country. And they get a subscription agreement that says New York choice of law. No question about it. That's what they're doing. They get a promissory note. It refers to the subscription agreement. It refers to the security agreement. If you're signing up, you think you're under New York law when you're signing on for liability, to whatever extent there is liability here. And it is under that that the reasonable person is thinking this is New York law. And Judge Mackney did a nice job of that. So the obligation being enforced is in the note. The note incorporates the provisions of the security agreement that says it's to be that New York law applies? Yes, Your Honor. And, in fact, I would even make specific point in regards to Judge Mackney's decision in which when he goes through the explanation of the aspects of this, he even talks about the fact of how these parts fit together. And the fact that the actual agreement itself that's referred to in the limited partnership agreement in turn refers back to the obligation. Okay. And the documents that were in the hands of the investors were what? Both the security agreement and the? They would have been ultimately receiving the security agreement as part of the package, the security agreement, the secured nonrecourse note. So the pre-release agreement, the nonrecourse note, the nonrecourse note, the nonrecourse note, the nonrecourse note, these are all the 1231, 1984, and then also in particular the subscription agreement on it, which is, of course, the offering document that they were provided. There's also the confidential memorandum. What about the partnership? You think they would have also gotten the partnership agreement, because that's the one that? I assume they would, Your Honor, and they would, and it was an Arizona partnership, but the obligation that they were taking liability under was all related to the promissory note, not relating to the fact that they were partners. In fact, if you read the partnership agreement, they could never be sued for this amount because of the cap on contributions, and it is a limited partnership agreement. To give liability beyond that, they had to do something else, and therein lies why we think Judge McAmey did a nice job of walking through agreements, noting that there's only one that deals with Arizona, all others deal with New York consistently, and it's what the reasonable expectations of the parties would be. We're also not talking about a situation where this was. It's my understanding of the ultimate issue in the case, or at least, were there no statute of limitations problem, correct, i.e., is there a limit to the amount of contribution or is it the $260,000? Is that ultimately what, if we ever got to the merits of the case, what it would be about? I think there would be a lot more, Your Honor, in terms of remand. All right. Is it one of the things it would be about? I could get it. I don't want to – I will take up as much time as you want, but quite frankly, these are two very lengthy notes. The reason it's relevant is because, as you just observed, that makes the partnership agreement at least relevant. I do think it's relevant, Your Honor. I don't think it's irrelevant. But I don't think it's the key documents upon which my clients have been sued upon and were sued upon. So how do you decide with regard to the enforcement of a contractual choice of law contract? Suppose it turns out, as the case, for some reason the limitations issue goes away and it goes down the line and the partnership agreement turns out to be the key thing. The district court decides that, in fact, there is $100,000. There is a limitation to the contribution. Why? Because of the partnership agreement. So how can we now, knowing that there is this complex of contracts, some of which say one of the things and some of which say the other thing and we don't know which one is going to end up mattering, what do you do with that? I understand, Your Honor, and if there are conflicts between documents in a case, that is a decision the court has to make. Ultimately, you're dealing with 142.2b of the restatement, a more significant relationship to the parties in the occurrence. Is that what we're looking at or are we looking at? But I thought that your ultimate position is that it's the contract that governs, not that it's an interest analysis. Well, that, to get to New York and then the conflict of law provisions, once you get to New York, it does have a choice of law provision which takes you to New York and that restriction. And the statute of limitations of New York would then kick in at that point and have cut this off at six years, long before we get to the process here. Well, isn't it, I mean, oversimplifying, but isn't your position basically that if you look at the obligation that's trying to be enforced here, it's the obligation in the note? Yes, Your Honor, we do think that's the case. And if you read the note and the document referenced in the note, that that sends you back, that gives you the New York choice of law. And if in interpreting the amount of the obligation, you may bring in other documents, that is not relevant for purposes of this decision here as to the law for the statute of limitations. That is our position. That the core liability still goes back to these contracts, the subscription agreements, and that there are other related documents that would be relevant for certain issues, but not this on it. The actual issue regarding the date of declaration of the acceleration, again, we disagree with counsel, and we've attempted to address it. Judge McNamee points out that this is a date that was not happened on by choice. It was used repeatedly in court filings. The fact that someone may want to say, oh, I've declared default on five grounds, I hereby later recount three, doesn't deal with the date that you pulled the trigger. The trigger was clearly pulled, and they told courts repeatedly was pulled in February of 1986, which was long before it caused the expiration of statute of limitations. I will not, unless the Court wishes to get into our position regarding inconsistency on judicial apopo, we think we've addressed that in the briefs. Thank you. Any further questions? Thank you, counsel. I'll try to be brief because I've only got a couple minutes. Getting back to, I don't even remember whose question it was now, as to whether the partners would have received a copy of the partnership agreement, yes. If you look in the record, it was attached as part of the subscription agreement that they signed. So they certainly and most definitely had a copy of the partnership agreement when they signed up for this transaction in the first place. The partnership could have negotiated various business transactions and, in fact, had more than one note they were liable on, right? They could have, yes. In this case, there would be two. And in determining the liability on the various notes, wouldn't they look first to the language of the note?  If you're liable on the note, you would look there first. If you're looking for the limited partners' liability on the note, you'd have to look first. But if you're liable on the note only for a certain period of time, the fact that you have a partnership agreement wouldn't change that, would it? Because it's the note you're liable on. Well, in this case, you've got to remember we're dealing with limited partners. The only they didn't sign the promise arrangements. They weren't parties. But, I mean, anyone, anyone, limited partners, individuals, corporations, utilities, United States government, all can be liable on notes. But when you look to the extent of the liability on the note, you look to the note. You don't look to the papers that created the entity that is a party to the note. You look to the document that the party to be charged signed. And in this case, that's the partnership agreement. They didn't sign the partnership note. I think it's the note. So they couldn't be liable on the partnership note. The partnership could no more bind them to be personally liable for pro rata shares than they could bind the court. If it said the Ninth Circuit judge will be liable for proportionate shares. It doesn't bind you unless you sign. Same thing for the limited partners. They needed to sign. They didn't. I'm out of time. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Berzon, Roth